## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Richard Sapp,                                    Civil No. 15-1589 (DWF/LIB)

          Plaintiff,

v.                                               **MEMORANDUM**
                                                 **OPINION AND ORDER**

City of Baudette; City of Big Lake; City of
Brooklyn Park; City of Buffalo Lake; City
of Burnsville; Cass County; City of Golden
Valley; Hennepin County; City of
Inver Grove Heights; Pipestone County;
City of St. Paul; City of Thief River Falls;
Washington County; City of White Bear
Lake; City of Woodbury; Michael
Campion, in his individual capacity as the
Commissioner of the Department of Public
Safety; Ramona Dohman, in her individual
capacity as the Commissioner of the
Department of Public Safety; John and Jane
Does (1-200) acting in their individual
capacity as supervisors, officers, deputies,
staff, investigators, employees or agents of
the other governmental agencies;
Department of Public Safety Does (1-30)
acting in their individual capacity as
officers, supervisors, staff, employees,
independent contractors or agents of the
Minnesota Department of Public Safety;
and Entity Does (1-50) including cities,
counties, municipalities, and other entities
sited in Minnesota,

          Defendants.

---

Jeffrey M. Montpetit, Esq., and Susan M. Holden, Esq., SiebenCarey, P.A.; and Lorenz F.
Fett, Jr., Esq., Sonia L. Miller-Van Oort, Esq., and Jonathan A. Strauss, Esq., Sapientia
Law Group PLLC, counsel for Plaintiff.

Jon K. Iverson, Esq., Stephanie A. Angolkar, Esq., and Susan M. Tindal, Esq., Iverson Reuvers Condon, counsel for Defendants City of Baudette, City of Big Lake, City of Brooklyn Park, City of Buffalo Lake, City of Burnsville, City of Golden Valley, City of Inver Grove Heights, City of Thief River Falls, City of White Bear Lake, and City of Woodbury.

Erin E. Benson, Esq., Margaret A. Skelton, Esq., and Timothy A. Sullivan, Esq., Ratwik, Roszak & Maloney, PA, counsel for Defendants Cass County, Pipestone County, and Washington County.

Toni A. Beitz, Senior Assistant County Attorney, Daniel D. Kaczor and Beth A. Stack, Assistant County Attorneys, Hennepin County Attorney's Office, counsel for Defendants Hennepin County and its John and Jane Doe Employee(s).

Kara M. Kisch and Adam M. Niblick, Assistant City Attorneys, St. Paul City Attorney's Office, Counsel for Defendant City of St. Paul.

Oliver J. Larson, Assistant Attorney General, Minnesota Attorney General's Office, counsel for Defendants Michael Campion and Ramona Dohman.

---

## INTRODUCTION

This matter is before the Court on the following motions: (1) Motion to Dismiss and/or to Sever brought by City of St. Paul (Doc. No. 14); (2) Motion to Dismiss and/or to Sever brought by Hennepin County and its John and Jane Doe employee(s) (Doc. No. 19); (3) Motion to Dismiss and/or to Sever brought by City of Baudette, City of Big Lake, City of Brooklyn Park, City of Buffalo Lake, City of Burnsville, City of Golden Valley, City of Inver Grove Heights, City of Thief River Falls, City of White Bear Lake, and City of Woodbury (together, "City Defendants") (Doc. No. 26); (4) Motion to Dismiss and/or to Sever brought by Cass County, Pipestone County, and Washington County (together, "County Defendants") (Doc. No. 36); and (5) Motion to

2

Dismiss brought by Michael Campion and Ramona Dohman (Doc. No. 48).  For the reasons set forth below, the Court grants in part and denies in part the motions to dismiss.

## BACKGROUND

This case relates to the alleged unlawful access of Plaintiff Richard Sapp's ("Sapp" or "Plaintiff") information that is contained in the Department of Vehicle Services' ("DVS")[1] motor-vehicle records database for Minnesota Drivers (the "Database").  (*See generally* Doc. No. 1, Compl.)  Plaintiff alleges that personnel from various government entities accessed his information contained in the Database without a lawful purpose.  (*See generally id*.)  Plaintiff alleges that the Database includes individuals' "names, dates of birth, driver's license numbers, addresses, driver's license photos, weights, heights, social security numbers, various health and disability information, and eye colors of Minnesota drivers, both current and former information dating back to the driver's first license issued in Minnesota."  (*Id.* ¶ 61.)  Many of the allegations in this case are identical to the allegations made in the numerous and substantially similar cases previously filed in this District[2] and are very familiar to the Court.  *See, e.g.*, *Mallak v. Aitkin Cty.*, 9 F. Supp. 3d 1046, 1049-52, 1065-68 (DWF/LIB) (D. Minn. 2014) (describing plaintiff's allegations relating to the actions by the various government entities and the Commissioner defendants, and also describing the

---

[1]    DVS is a division of the Minnesota Department of Public Safety ("DPS"). (Compl. ¶ 60.)

[2]    *See, e.g.*, *Sherno v. Anoka Cty.*, Civ. No. 14-982, 2014 WL 4670926, at *1 (D. Minn. Sept. 19, 2014) (citing *Roschen v. Wabasha Cty.*, 29 F. Supp. 3d 1244, 1249 n.4 (D. Minn. 2014) (counting twenty-eight such cases in this District as of June 2014)).

background and framework of the Driver's Privacy Protection Act ("DPPA")).

Therefore, here, the Court need not restate all of Plaintiff's allegations and, instead, will

focus on alleged facts that are unique to this case.

Plaintiff alleges that he has worked as a police officer since 1994—first for the

Minnesota State Fair Grounds, then for Rush City, and currently for the North Branch

Police Department where he has worked since 1999. (Compl. ¶¶ 41, 42.) Plaintiff lives

in North Branch, Minnesota, where he has lived since 1999. (*Id.* ¶ 59.) He grew up in

North St. Paul where his father was the Chief of Police. (*Id.* ¶¶ 39, 40.) Plaintiff has been

married to his wife Katherine ("Ms. Sapp") since 2001. (*Id.* ¶ 38.) Ms. Sapp was a 911

dispatcher for Washington County from 1997 to 2001. (*Id.* ¶ 53.)

Plaintiff alleges that he dated Jennifer Rivard ("Rivard") between 1992 and 1997

and that the two lived together between 1995 and 1997 when they broke up and lost

contact for some years. (*Id.* ¶¶ 43-45.) Plaintiff alleges that he called the Brooklyn Park

Police Department in the "mid-2000's" in the course of his police duties. (*Id.* at ¶ 46.)

Rivard answered the call, and they engaged in "small talk." (*Id.*) Plaintiff alleges that

when he and Ms. Sapp received audits of their DVS records, they saw that someone

began repeatedly obtaining their driver's license information around the time of

Plaintiff's call to the Brooklyn Park Police Department.[3] (*Id.* ¶ 47.) Plaintiff and

Ms. Sapp believed it was Rivard who had obtained their information. (*Id.*) Ms. Sapp

alleges that she has never met or spoken to Rivard. (*Id.* ¶ 48.) Plaintiff alleges that he

---

[3]   There were twenty-one lookups of Plaintiff and fourteen lookups of Ms. Sapp.
(Compl. ¶ 47.)

and his wife talked with a Lieutenant with the Brooklyn Park Police Department about

the accesses, and he confirmed that Rivard was the person who looked them up so

frequently in Brooklyn Park.  (*Id.* ¶¶ 49, 50.)  Plaintiff alleges he and Ms. Sapp were

concerned Rivard looked up their home address to stalk them.  (*Id.* ¶ 52.)

Plaintiff further alleges that on May 15, 2009, the Minneapolis Star Tribune

published an article about Ms. Sapp and her siblings, one of whom is married to a

Minneapolis police officer.  (*Id.* ¶¶ 54, 55.)  Plaintiff alleges Ms. Sapp's DVS audit

shows she was looked up by the Minnesota Department of Natural Resources ("DNR")

the day after the article appeared and that a letter from the DNR confirmed that the

lookup was not for an official purpose.  (*Id.* ¶¶ 56, 57.)

Plaintiff sought an audit of the lookups associated with his information in the DVS

database, which he received on April 4, 2013.  (*Id.* ¶¶ 233, 235.)  Plaintiff alleges that his

name, not his driver's license number or license plate number, was accessed nearly fifty

times since 2003.  (*Id.* ¶¶ 236, 237.)  Plaintiff alleges that there were a number of

simultaneous accesses of his and Ms. Sapp's information.  (*Id.* ¶¶ 145, 146; *see also id.*,

Exs. A, B.)  Plaintiff alleges that he was looked up numerous times at odd hours of the

day.  (*Id.* ¶¶ 147-52.)  Plaintiff repeatedly alleges he was not charged with a crime, the

subject of an investigation, or seeking police assistance in connection with these lookups.

(*See, e.g., id.* ¶¶ 75-143, 157, 240, 249, 306.)  Plaintiff alleges he has not been pulled

over for a traffic violation since the early to mid-2000s.  (*Id.* ¶ 241.)  Plaintiff alleges that

a February 2013 Legislative Audit Subcommittee hearing revealed that at least 50% of

law enforcement officers misuse the DPS database.  (*Id.* ¶ 320.)

In his Complaint, Plaintiff asserts only one claim:  Violation of the DPPA, 18 U.S.C. § 2721, *et seq.*  (*Id.* ¶¶ 334-55.)  He seeks liquidated, actual and compensatory damages, punitive damages, and injunctive relief.  (*Id.* at Jury Demand ¶¶ 1-6.)

Defendants now move to dismiss the case based primarily on the statute of limitations and for failure to state a claim.  (*See* Doc. Nos. 14, 19, 26, 36, 48.)  In the alternative, Defendants (excluding the Commissioners) seek severance.  (*See id.*)

## DISCUSSION

## I.     Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative

level." *Id*. at 555.  As the United States Supreme Court reiterated, "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," will not

pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

*Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a

reasonable expectation that discovery will reveal evidence of [the claim]."  *Twombly*, 550

U.S. at 556.

The issues raised by the parties in the present motions have been extensively

discussed in connection with other DPPA cases in this District and need not be repeated

here.  In addition, the Court previously granted multiple motions to dismiss in a case

brought by Ms. Sapp asserting nearly-identical allegations as those raised in Plaintiff's

Complaint.  *See Sapp v. City of Brooklyn Park (Sapp I)*, Civ. No. 14-4698, 2015 WL

3795613 (DWF/LIB) (D. Minn. June 18, 2015).  The Court will for the most part follow

its prior reasoning as articulated in *Mallak* and applied in *Sapp I*.  *See Mallak*, 9 F. Supp.

3d 1046; *Sapp I*, 2015 WL 3795613.  Since the Court's decision in *Sapp I*, however, the

Eighth Circuit Court of Appeals issued an opinion addressing many of the issues raised

by the parties in this case.  *See McDonough v. Anoka Cty.*, 799 F.3d 931 (8th Cir. 2015).[4]

Thus, the Court will note below where the *McDonough* opinion clarifies or alters the

Court's interpretation of the DPPA issues raised by the parties.

---

[4]     The *McDonough* opinion was issued on August 20, 2015 after some of the briefing
in this case had already been submitted to the Court.  However, all parties had an
opportunity to address the *McDonough* opinion at oral argument.  Indeed, counsel for the
Plaintiff and Defendant Cities discussed the case at oral argument in detail.

**II.      Statute of Limitations**

With respect to the question of the applicable statute of limitations in DPPA cases,

the Eighth Circuit recently held that the statute of limitations for DPPA violations is

governed by "the catch-all, four-year statute of limitations in 28 U.S.C. § 1658(a)"[5] and

"beg[ins] to run when the violations occurred."  *Id.* at 939-943.  In *McDonough*, the

Eighth Circuit concluded that the occurrence rule rather than the discovery rule should

apply based on "the text, structure, and purpose of" § 1658 as well as "the general policy

underlying statutes of limitation" and "equitable considerations relevant to the cause of

action at hand."  *Id.* at 942.  Following the Eighth Circuit's analysis and consistent with

the Court's prior reasoning in *Mallak*, 9 F. Supp. 3d. at 1052-55, the Court finds that the

occurrence rule applies to Plaintiff's DPPA claims.[6]

In this case, because Plaintiff filed his complaint on **March 25, 2015**, the statute

of limitations bars claims regarding lookups occurring before **March 25, 2011**.  As a

result, Plaintiff's DPPA claims related to the following lookups that occurred before

March 25, 2011, are time-barred and must be dismissed:

1.      Three City of St. Paul lookups.

2.      Two Hennepin County lookups.

---

[5]      The parties in the *McDonough* case, like the parties here, did not dispute that the general four-year statute of limitations for federal civil actions applied.  *See McDonough*, 799 F.3d at 939.

[6]      Plaintiff makes no allegations that would support an argument for equitable tolling in this case.

3.      One City of Baudette lookup.

4.      One City of Big Lake lookup.

5.      Nineteen City of Brooklyn Park lookups.

6.      One City of Buffalo Lake lookup.

7.      One City of Burnsville lookup.

8.      One City of Golden Valley lookup.

9.      Three City of Inver Grove Heights lookups.

10.     One City of Thief River Falls lookup.

11.     One City of Woodbury lookup.

12.     One Cass County lookup.

13.     One Pipestone County lookup.

14.     Two Washington County lookups.

(See Compl. ¶¶ 66, 67, Ex. B.)

In sum, all DPPA claims for data lookups done prior to March 25, 2011, are dismissed as time-barred.  As a result, only three lookups by two entities remain.

**III.     The DPPA**

In light of the Court's ruling on the statute of limitations, the remaining lookups in this case that support Plaintiff's DPPA claims are as follows:

| Entity Accessing Records | Date of Lookups Alleged |
|:---:|:---|
| Brooklyn Park | 3/30/2011 |
| | 6/13/2012 |
| White Bear Lake | 6/2/2011 |
| | **3 lookups** |

(*See id.*)

With respect to these claims, the Court will follow the Eighth Circuit's recent opinion in *McDonough* and its own prior holdings and analysis in *Mallak* to the extent not inconsistent therewith. *See McDonough*, 799 F.3d at 944-55; *Mallak*, 9 F. Supp. 3d at 1051-52, 1055-59. "To establish a DPPA violation, [a plaintiff] must prove that the [d]efendants 1) knowingly 2) obtained, disclosed, or used personal information, 3) from a motor vehicle record, 4) for a purpose not permitted." *McDonough*, 799 F.3d at 945 (citing 18 U.S.C. § 2724(a)); *see also Mallak*, 9 F. Supp. 3d at 1051-52, 1055-57. Whether an individual "obtained" information involves a fact-specific analysis, but need not necessarily include physical possession. *McDonough*, 799 F.3d at 944 ("Congress could not have intended to require physical procurement of intangible information. In the context of the DPPA, the word 'obtain' unambiguously includes access and observation of the data."); *Mallak*, 9 F. Supp. 3d at 1055-57. Further, it is a DPPA violation to obtain information without a permissible purpose even if the information is not later used. *McDonough*, 799 F.3d at 944-45. Here, Plaintiff argues that he has adequately alleged the elements of a DPPA claim against each Defendant. (*See generally* Doc. Nos. 24, 34.)

10

Defendant Cities argue that Plaintiff has failed to plausibly allege the essential element of an impermissible purpose.  (*See* Doc. No. 28 at 5-10.)[7]

The Eighth Circuit's opinion in *McDonough* provides a detailed illustration of the proper analysis for assessing the plausibility of DPPA claims under Federal Rule of Civil Procedure 8(a).  *See id.* at 944-55.  The court explained that district courts must examine the alleged conduct of each defendant independently "to ensure that [plaintiffs] have pleaded sufficient facts regarding that [d]efendant's impermissible purpose to state a facially plausible claim to relief against that [d]efendant."  *Id.* at 946.  However, the complaint should be read as a whole, and claims need not be assessed in isolation.  *Id.*  In addition, "allegations concerning data accesses that do not themselves constitute violations because they are barred by the statute of limitations still may be considered in assessing the plausibility of timely claims."  *Id.*

The Eighth Circuit explained that the complaint as a whole may lead to the reasonable inference "that many of the accesses were not within the scope of official government functions."  *Id.* at 947.  This may be the case, for example, if the complaint alleges that an individual's record is "accessed hundreds of times by dozens of government entities throughout the state of Minnesota in the span of a few years," that the individual has not been under investigation for particular crimes, and "has reason to

---

[7]     In light of the Eighth Circuit's holding that obtainment includes accessing an individual's record and based on the record of lookups of Plaintiff's information, the Court concludes that Plaintiff has sufficiently alleged the first three elements of a DPPA claim against the remaining Defendants.  Thus, the Court's analysis will focus on whether Plaintiff has plausibly alleged that his information was accessed "for a purpose not permitted."  *Id.* at 945.

believe Law Enforcement Does may have a personal interest in her." *Id.* Such

allegations "may carry a claim against a particular [d]efendant to the brink of

plausibility." *Id.* However, the Eighth Circuit explained, "[w]hen there are no

allegations of concerted activity, something more is needed to nudge the allegations

across the line of plausibility and tie the conduct of specific [d]efendants to a more

general inference of impermissible purpose." *Id.* In sum, courts are directed to engage in

a two-step inquiry. First, the Court must determine whether there is a "general inference

of impermissible purpose" based on the allegations in the complaint as a whole. Next,

the Court must look at the particular allegations relating to individual defendants to

discern whether the facts alleged indeed constitute a plausible claim. *See id.*

Under *McDonough*'s second step, the Eighth Circuit provides the following

examples of what might nudge allegations across the line of plausibility:

> . . . a relationship with particular officers or agents of Local Entities, that
> the alleged accesses occurred shortly after interactions with officers or
> agents of Local Entities, or that certain Law Enforcement Does' accesses
> were timed in such a way that they corresponded with a significant event
> that could explain the interest in Drivers' personal information.

*Id.* Other examples include:

> 1) accesses on the same day as or within a few hours of accesses by other,
> unrelated entities during the limitations period; 2) multiple late-night
> accesses during the limitations period; or 3) a history of frequent suspicious
> accesses fitting the above criteria, even if prior to the limitations period,
> coupled with accesses within the limitations period.

*Id.* at 950.  Courts should consider whether law enforcement entities have "offered an 'obvious alternative explanation' that renders [such] accesses non-suspicious." *Id.*[8]  In analyzing the plausibility of claims against a particular defendant, "the fact that any suspicious accesses occurred through [an agency] render[s] suspect the other accesses through their station[]." *Id.*  In addition, "a pattern of personal interest in [a plaintiff] on the part of law enforcement officers . . . add[s] to the plausibility of [the plaintiff's] allegations of impermissible purpose." *Id.* at 951.

In light of the Eighth Circuit's opinion in *McDonough*, the Court must now examine the facts alleged in this case to determine whether Plaintiff has stated a plausible claim.  *See Roschen*, 29 F. Supp. 3d at 1254 (stating that in DPPA cases, the court must "attempt to discern cases which allege plausible claims from cases where plaintiffs engage in farfetched speculation that does not rise to the level of plausibility").  The Court concludes that Plaintiff sufficiently states a plausible claim for a violation of the DPPA with respect to the Brooklyn Park lookups and that the claim crosses the requisite "line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  However, the Court concludes that Plaintiff fails to state a plausible claim for a violation of the DPPA with respect to the White Bear Lake lookup.  *See id.*

---

[8]     The Eighth Circuit considered whether to apply a "presumption of regularity" presuming that public officers properly discharge their official duties.  In the context of the cases before the court, however, the Eighth Circuit concluded that "[w]hatever weight the 'presumption of regularity' might otherwise have . . . , [d]rivers have sufficiently rebutted it by alleging high volumes and suspicious timing of accesses and by pointing to the legislative auditor's report finding that at least half of Minnesota law enforcement officers were misusing personal information in the database." *Id.* at 948.

Plaintiff alleges that fifteen agencies accessed his record for an impermissible purpose forty-one times since 2003.  He asserts that he was not under investigation for any crimes or involved with these agencies in any way that would justify these accesses. Plaintiff also alleges multiple reasons why individual law enforcement officers "may have a personal interest in [him]."  *See McDonough*, 799 F.3d at 947.  Such reasons include:  (1) ties to law enforcement through Plaintiff's professional career and that of his wife and other relatives; (2) a personal relationship with Plaintiff's former girlfriend and Brooklyn Park employee, Rivard, and the admission that Rivard had improperly accessed Plaintiff's record; and (3) an admission by the DNR of an improper lookup of Ms. Sapp in 2009 after a Star Tribune article relating to Ms. Sapp and her siblings was published.

With respect to *McDonough*'s first step, the Court concludes that these allegations support a "general inference of impermissible purpose" and carry Plaintiff's claims "to the brink of plausibility."  *Id.*  Although the number of accesses in this case is fewer than the number of accesses found to carry the plaintiffs' claims to the brink of plausibility in *McDonough*, the Court nonetheless concludes that a general inference of impermissible purpose is warranted.  In *McDonough*, the Eighth Circuit did not establish any specific numeric thresholds that would generate a plausible claim and emphasized that "courts must assess the plausibility of plaintiffs' grounds for relief by drawing on their own 'judicial experience and common sense.'"  *Id.* at 948 (quoting *Iqbal* 556 U.S. at 679). Here, the Court finds that Plaintiff has sufficiently alleged a number of reasons for the Court to reasonably infer that his record was not accessed for a permissible purpose.

Turning to the specific allegations against the remaining Defendant Cities, the Court concludes that Plaintiff has stated a plausible claim against Brooklyn Park. In analyzing Plaintiff's claims against Brooklyn Park, the Court considers both timely and time-barred accesses. As the Eighth Circuit clarified in *McDonough*, "allegations concerning data accesses that do not themselves constitute violations because they are barred by the statute of limitations still may be considered in assessing the plausibility of timely claims." *Id.* at 946. In *McDonough*, none of the Plaintiffs alleged "that they had a relationship with particular officers or agents of Local Entities." *Id.* at 947. However, the Eighth Circuit suggested that such a relationship may be sufficient to "tie the conduct of specific Defendants to a more general inference of impermissible purpose" under *McDonough*'s second step. *Id.* In the absence of a specific relationship, the Eighth Circuit also explained how suspicious access patterns could carry a claim across the plausibility threshold. *See id.* at 947-48, 50. In this case, Plaintiff alleges both a relationship with a particular agent of Brooklyn Park and suspicious access patterns that render suspect all of the Brooklyn Park accesses.

Plaintiff reached his ex-girlfriend, Rivard, when he called Brooklyn Park in the mid-2000s. After receiving his audit in April 2013, Plaintiff contacted Brooklyn Park to inquire about the numerous lookups of his information in Brooklyn Park. A Brooklyn Park Police Lieutenant confirmed that Rivard was the person who looked up Plaintiff and Ms. Sapp so frequently in Brooklyn Park. In light of *McDonough*, the Court concludes that the Plaintiff's relationship with Rivard and the Lieutenant's admission lend significant weight to the plausibility of Plaintiff's claim against Brooklyn Park.

15

In addition, suspicious access patterns such as those described in *McDonough* are evident in the Brooklyn Park lookups of Plaintiff's information.  An individual at Brooklyn Park looked up Plaintiff's information between the hours of 11 p.m. and 6 a.m. three times out of twenty-one total accesses.  In addition, the Eighth Circuit did not foreclose the possibility that suspicious access patterns other than those identified in *McDonough* may be relevant to the plausibility analysis.  The Court notes at least two other suspicious patterns to support Plaintiff's claim in this case.  First, a Brooklyn Park employee accessed Plaintiff's and his wife's record on the same day twelve separate times.  As this Court has previously observed, "connected lookups between husband and wife create a 'troubling pattern'" that supports the plausibility of a plaintiff's claim. *Pinski v. City of Cottage Grove*, Civ. No. 14-325, 2014 WL 5810364, at *5 (D. Minn. Nov. 7, 2014) (quoting *Kampschroer v. Anoka Cty.*, 57 F. Supp. 3d 1124, 1132-34, 1139-41 (D. Minn. 2014)).  Second, thirteen of the Brooklyn Park lookups occurred between the same window of time between 8:00 p.m. and 10:00 p.m, and seven of these thirteen lookups occurred between the even narrower window between 8:44 p.m. and 8:53 p.m.  Such related lookups took place many years apart, from 2004 through the lookups in 2011 and 2012.  These access patterns make it plausible that the same individual—likely Rivard—was looking up Plaintiff's information many years apart, establishing a suspicious access pattern that supports the plausibility of Plaintiff's claim against Brooklyn Park.

Brooklyn Park offers no obvious alternative explanations for the lookups of Plaintiff's information.  In fact, Brooklyn Park acknowledges that the Lieutenant

admitted Rivard was accessing Plaintiff's record.  Relying on this Court's prior decision in *Sapp I*, Brooklyn Park argues that a gap in accesses between the mid-2000s lookups and the 2011 and 2012 lookups renders any suspicious activity from the mid-2000s irrelevant to subsequent lookups.  (*See* Doc. No. 28 at 8-9 (citing *Sapp I*, 2015 WL 3795613, at *4).)  However, *McDonough* suggests that "the fact that any suspicious accesses occurred through [an agency] render[s] suspect the other accesses through their station[]."  *McDonough*, 799 F.3d at 950.  Thus, to the extent there is any gap or change in the pattern between the mid-2000s and the later lookups, the Court concludes that gap is irrelevant to the Court's plausibility analysis.

Based on *McDonough* and as in *Mallak*, at this stage, these facts, together, sufficiently state a plausible claim that Plaintiffs' records were not accessed for a permitted purpose.  *See id.* at 945-54; *Mallak*, 9 F. Supp. 3d at 1057-59.  These facts offer more than mere "speculation," and instead offer a plausible inference that Defendants acted for an impermissible purpose.  In sum, Plaintiffs allege sufficient facts to support a claim for a DPPA violation against Brooklyn Park, and therefore, Defendant City of Brooklyn Park's motion under Rule 12(b)(6) is denied to the extent it relates to such lookups.

On the other hand, with respect to Plaintiff's claim against White Bear Lake, Plaintiff makes conclusory allegations that fall squarely within *Iqbal*'s admonishment that, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Plaintiff alleges only one lookup by a White Bear

Lake employee that occurred on June 2, 2011.  Plaintiff alleges no relationships with particular law enforcement officers, interactions with White Bear Lake law enforcement officers, events involving White Bear Lake, or suspicious access patterns specific to White Bear Lake.  Plaintiff merely alleges that he has never been charged with a crime or involved in an investigation or legal proceeding in White Bear Lake.  In light of these allegations, Plaintiff fails to state a claim for a DPPA violation against Defendant City of White Bear Lake under Rule 12(b)(6).  Thus, Plaintiff's remaining DPPA claim against this Defendant must be dismissed.

## IV.    Commissioners

The arguments Plaintiff presents in this case with respect to the Commissioners are substantially similar to those presented in *Mallak*.  (*Compare* Compl. ¶¶ 158-216, 312-33; *and Mallak*, 9 F. Supp. 3d at 1050-51 (making substantially similar allegations relating to the Commissioners).)  The arguments also mirror those recently considered by the Eighth Circuit in *McDonough*.  *See McDonough*, 799 F.3d at 955-57.  In *McDonough*, the Eighth Circuit affirmed the dismissal of the claims against the Commissioners based on qualified immunity.  *Id.* at 957.  As the court explained, "we cannot say that, at the time of the alleged accesses, any reasonable official would have understood that DPS's policy of allowing . . . government employees password-protected access to the database violated Drivers' rights under the DPPA."  *Id.* at 956.  As a result, the Court again concludes that all claims against the Commissioners must be dismissed in accordance with *McDonough* and this Court's prior analysis and holdings in *Mallak*, which it adopts herein.  *See id.* at 955-57; *Mallak*, 9 F. Supp. 3d at 1065-67.  Therefore,

Plaintiff's claims against the Commissioners, and correspondingly against the DPS Does, are dismissed in their entirety.

## V.     Qualified Immunity

The City Defendants, the only remaining Defendants in this case after dismissing time-barred claims, have not specifically raised a qualified immunity defense.  However, Defendant Hennepin County raised this issue in support of its Motion to Dismiss.  To the extent Defendants assert that they are entitled to qualified immunity, the Court further adopts its reasoning in *Mallak.  See Mallak*, 9 F. Supp. 3d at 1063-64.  In sum, the Court finds that Plaintiff has adequately alleged the violation of a clearly established statutory right, but that Defendants may be able to establish that they are in fact entitled to qualified immunity as the case proceeds.  *Id.*  At this stage, however, there is no qualified immunity.

## VI.     Severance

Because the City of Brooklyn Park is the only remaining Defendant in this matter after dismissing the claims against the remaining Defendants in their entirety, the Court concludes that the issue of severance is moot.

## CONCLUSION

In sum, a number of Plaintiff's claims are barred by the applicable four-year statute of limitations.  Further, Plaintiff fails to state a claim for a DPPA violation against Defendant City of White Bear Lake under Rule 12(b)(6), and Plaintiff's DPPA claim against that entity must be dismissed.  However, in light of the Eighth Circuit's recent opinion in *McDonough*, the Court concludes that Plaintiff has properly stated a claim

against Defendant City of Brooklyn Park in this matter.  Therefore, the Court will allow Plaintiff's timely claims against Brooklyn Park relating to accesses on March 30, 2011 and June 13, 2012 to proceed.

**ORDER**

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      The Motion to Dismiss and/or to Sever brought by City of St. Paul (Doc. No. [14]) is **GRANTED** and all Counts against City of St. Paul are **DISMISSED WITH PREJUDICE**.

2.      The Motion to Dismiss and/or to Sever brought by Hennepin County and its John and Jane Doe employee(s) (Doc. No. [19]) is **GRANTED** and all Counts against Hennepin County are **DISMISSED WITH PREJUDICE**.

3.      The Motion to Dismiss and/or to Sever brought by City of Baudette, City of Big Lake, City of Brooklyn Park, City of Buffalo Lake, City of Burnsville, City of Golden Valley, City of Inver Grove Heights, City of Thief River Falls, City of White Bear Lake, and City of Woodbury (together, "City Defendants") (Doc. No. [26]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

a.      The Motion is **GRANTED** with respect to all lookups conducted before March 25, 2011 for Plaintiff's claim against City of Brooklyn Park.

b.      The Motion is **DENIED** with respect to all lookups

conducted after March 25, 2011 for Plaintiff's claim against City of

Brooklyn Park.

c.      The Motion is **GRANTED** with respect to the following

Defendants who are **DISMISSED WITH PREJUDICE**:  City of Baudette,

City of Big Lake, City of Buffalo Lake, City of Burnsville, City of Golden

Valley, City of Inver Grove Heights, City of Thief River Falls, City of

White Bear Lake, and City of Woodbury.

4.      The Motion to Dismiss and/or to Sever brought by Cass County, Pipestone

County, and Washington Count (together, "County Defendants") (Doc. No. [36]) is

**GRANTED** and all Counts against the County Defendants are **DISMISSED WITH**

**PREJUDICE**.

5.      The Motion to Dismiss brought by Michael Campion and Ramona Dohman

(Doc. No. [48]) is **GRANTED** and all Counts against Michael Campion and Ramona

Dohman are **DISMISSED WITH PREJUDICE**.


Dated:  March 28, 2016              s/Donovan W. Frank
                                    DONOVAN W. FRANK
                                    United States District Judge